NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCISCO URENA, | Civil Action No.: 11-6746 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Presently before the Court is Plaintiff Francisco Urena ("Plaintiff")'s Appeal seeking review of a final determination by Administrative Law Judge ("ALJ") Michal L. Lissek denying his application for Disability Insurance ("SSDI") and the Appeals Council's partial reversal of that decision. The Court has jurisdiction to review this matter pursuant to 24 U.S.C. § 405(g). The Court has considered the submissions made in support of and in opposition to the instant appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court affirms the final decision of the Commissioner.

I.   **FACTS AND PROCEDURAL HISTORY**

Plaintiff was injured in a workplace accident in 1999 when his hand was mangled in a woodworking machine. R. at 39.[1] As a result, he could not use his right arm. *Id.* Shortly thereafter, he was involved in a car accident in New York, injuring his right shoulder. *Id.* He attempted to work as a taxi driver, but had to stop in April 2006 after having brain surgery to remove a tumor. *Id.* at 39-40. Plaintiff also had surgery on his right shoulder. *Id.* at 39. Subsequently, he unsuccessfully attempted to find work as a taxi dispatcher. *Id.* at 39.

---

[1] "R." refers to pages of the Administrative Record SSA.

NOT FOR PUBLICATION

On July 14, 2006, Plaintiff filed an application for SSDI, alleging disability beginning April 17, 2006. R. at 35. This application was denied on July 13, 2007, and again upon reconsideration on July 3, 2008. *Id.* Plaintiff then filed a request for hearing on July 29, 2008, such hearing occurring on November 3, 2009. *Id.* Martin A. Fechner, MD, also appeared at that hearing. *Id.* After hearing testimony from Dr. Fechner about Plaintiff's physical capabilities, and receiving a response to interrogatories posited to Rocco Meola, a vocational expert, the ALJ concluded that Plaintiff was not disabled. *See* R. at 42-43.

Plaintiff then requested an appeal of the ALJ's decision. The Appeals Council partially reversed the ALJ. In so doing, the Appeals Council found that after January 22, 2010, the date of the ALJ's opinion, Plaintiff had turned 50 years of age, which required consideration of Plaintiff as "closely approaching advanced age" and thus a more restricted view of his residual functional capacity ("RFC"). R. at 11. As a result, the Appeals Council found that from January 22, 2010, to the present, Plaintiff was disabled and, thus, entitled to SSDI. R. at 12.

In making its decision, the Appeals Council adopted the ALJ's findings as of January 22, 2010. R. at 10. The ALJ specifically found that Plaintiff had certain severe mental and physical impairments, but that these impairments did not meet or exceed the listed requirements. R. at 37-38. The ALJ also found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date—April 17, 2006—through his last insured date—June 30, 2009. The ALJ found that Plaintiff had the RFC to perform light work, specifically fine repetitive movements with his right hand, never lifting his right arm overhead, lifting his right arm in all other directions occasionally, and performing no more than three-step tasks. R. at 39. However, the ALJ found that Plaintiff could not return to his past relevant work as a result of his injuries. R. at 41. Then, relying on Mr. Meola's responses to hypothetical questions, the ALJ

found that there were other jobs in significant number in the economy that Plaintiff could perform, thus finding Plaintiff not disabled. R. at 42-43.

Plaintiff timely filed this appeal on November 16, 2011, challenging both the ALJ's findings and the Appeals Council's adoption thereof in determining that Plaintiff was not disabled before January 22, 2010. Pl. Br. 1.

## II.   STATEMENT OF THE LAW

### A. Standard of Review

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court defers to the findings and conclusions of the ALJ, but has the "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). The Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Courts should "review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.'" *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (citing *Kotteakos v. United States*, 328 U.S. 750, 759 (1946)).

### B. The Five-Step Evaluation Process

Under the Social Security Act, a claimant must demonstrate that he is disabled based on an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is

disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration has established a five-part sequential evaluation process for determining whether a complainant is disabled. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner of Social Security ("the Commissioner") decides whether the complainant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the complainant meets this test, then the Commissioner must determine whether the complainant's impairments or combination of impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is determined to be severe, the Commissioner must then decide whether the complainant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If he does not, the Commissioner must then decide whether, based on the complainant's "residual functional capacity" ("RFC"), the complainant is able to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv) If the complainant is unable to perform said work, then the Commissioner must proceed to the final test. Up to this point, the burden falls upon the complainant to prove his disability. *See Wallace v. Sec'y of Health & Human Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983). If the complainant has carried his burden of proof to this stage, the burden shifts to the Commissioner to prove that other work exists in significant numbers in the national economy that the plaintiff could perform given his RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner provides sufficient evidence to overcome this burden and shows that there is work in a significant number of jobs that the plaintiff can perform, the plaintiff is not disabled. *Id.*

4

### III. DISCUSSION

Plaintiff makes three allegations in support of his appeal. First, he alleges that the ALJ erred as a matter of law in applying the Medical-Vocational Guidelines (the "Grids") in making her decision. (Pl. Br. at 22.) Second, Plaintiff claims that the ALJ erred as a matter of law by ignoring the conclusions of the state-appointed psychiatrist in finding that Plaintiff's mental disposition was "nearly normal." (Pl. Br. at 26.) Finally, Plaintiff alleges that the hypothetical posited to the vocational expert was vague and did not adequately reflect Plaintiff's restrictions. (Pl. Br. at 27.) The Court addresses each argument in turn.

#### A. The ALJ's use of the Grids

First, Plaintiff argues that the use of the Grids is improper where a claimant presents with both physical and mental impairments. Pl. Br. 22. The Government counters that, because substantial evidence supports the ALJ's findings, use of the Grids, to the extent they were used at all, constitutes harmless error. Def. Br. 5.[2]

"[T]he [ALJ] cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion)." *Sykes v. Apfel*, 228 F.3d 259, 261 (3d Cir. 2000). The regulations explain that:

> where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible

---

[2] The Government cites to *Gulf Oil Corp. v. Fed. Power Comm.*, 563 F.2d 588, 602-03 (3d. Cir. 1977), for the proposition that use of the Grids by an ALJ constitutes harmless error where the ALJ's findings are supported by substantial evidence.

5

> based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

20 C.F.R. Part 404 Appendix 2 § 200.00(e)(2).

In *Sykes*, the ALJ utilized the Grids without taking testimony from a vocational expert regarding the claimant's limitations. *See Sykes*, 228 F.3d 261. In contrast, here the ALJ propounded interrogatories to Mr. Meola, *see* R. at 187-92, thus satisfying her requirement to seek out additional evidence regarding Plaintiff's impairments and their impact on his ability to make a successful adjustment to other work. As will be explained, *infra*, vocational expert testimony may be deficient as a result of the questions posed; however, the use of a vocational expert or reliance upon a Social Security Ruling ("SSR") satisfies the ALJ's fact finding requirements at this stage. *See Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) ("a hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) ("if the [ALJ] wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base."). Thus, the Court holds that the ALJ appropriately

consulted a vocational expert and, thus, did not err, as a matter of law, in determining Plaintiff's RFC by reference to the Grids.

### B. The ALJ's assessment of Plaintiff's mental capacity

Next, Plaintiff contends that the ALJ's assessment of Plaintiff's mental status was erroneous because the ALJ failed to take into account the testimony of Dr. Solomon Miskin, a state-appointed consultative examiner. Pl. Br. 26. Specifically, he points out that Dr. Miskin "opined that Plaintiff shows 'a limited ability to understand, carry out and remember instructions, and a limited ability to respond appropriately to supervision, coworkers, and mild work pressures in a work setting. Adaptability and stress tolerance are very limited.'" *Id.* (citing. R. at 456.). The Government counters that this misconstrues the doctor's ultimate diagnosis and the ALJ's finding that Plaintiff's mental status was "nearly normal." Def. Br. 8. The Government cites the previous page of Dr. Miskin's report wherein the doctor states that Plaintiff was a

> neatly dressed, adequately groomed male who was alert and oriented in all spheres. He is cooperative, coherent, and compliant. Speech is clear. Response time is good. Comprehension is good. Affect is appropriate. ... There is no overt evidence of a thought disorder.

R. at 455. The Government also points out that Plaintiff could perform calculations and showed normal judgment, insight, concentration, attention, and working memory. Def. Br. 8 (citing R. at 455).

"The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources." SSR 96-5p at *6. The ALJ must consider these medical opinions and their consistency with the rest of the record. *Id.* at *7. "A medical source's statement about what an individual can still do

is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC." *Id.* at *12-13. If an ALJ discredits medical opinion testimony for any reason, she must adequately explain her reasons for doing so; failure to explain constitutes reversible error. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

"An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities, [which] include (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521.

Dr. Miskin diagnosed Plaintiff with major depressive disorder with moderate severity, but ruled out psychotic features. R. at 456. He also stated that Plaintiff had limited ability to understand and carry out basic instructions and to relate to supervisors, coworkers, and mild work pressures. He also noted that Plaintiff had never been hospitalized for psychiatric problems, that he had discontinued psychiatric treatment, and that he could relate to family members. R. at 454. These findings are reflected in the ALJ's opinion. R. at 41. The ALJ also incorporated Dr. Miskin's concerns about Plaintiff's concentration into the RFC, as can be seen by her limitation that Plaintiff only perform work with no more than three-step instructions. R. at 39. While the ALJ declared that, for the purposes of the five-step test, Plaintiff had a severe limitation in the form of depression, R. at 37, she also explained that she incorporated her "paragraph B" mental function analysis into her RFC determination. *See* R. at 38-39. No

evidence exists in the record to show that the mental limitations shown would so greatly affect Plaintiff's work that it would automatically result in a finding of disabled. See 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work."); 20 C.F.R. § 404.1545(a)(3) (it is the claimants responsibility to produce evidence used in the RFC). This lack of evidence supports the ALJ's findings regarding Plaintiff's mental limitations, which she states were incorporated into her RFC determination, thus the ALJ did not err as a matter of law in determining Plaintiff's RFC. The limitations the ALJ placed on Plaintiff in the RFC assessment were supported by substantial evidence found in the record. Accordingly, Plaintiff's argument that the ALJ failed to consider Dr. Mishkin's testimony is without merit.

### C. The vocational expert hypothetical

Finally, Plaintiff argues that the hypothetical posed to the vocational expert was deficient since it was contradictory and did not adequately reflect Plaintiff's limitations. Pl. Br. 27. The Plaintiff takes issue with the form the vocational expert filled out. (See R. at 187-90.) The form asks the vocational expert to "[a]ssume a hypothetical individual born on May 22, 1960, **[IS UNABLE TO COMMUNICATE IN ENGLISH/IS ILLITERATE/HAS A MARGINAL EDUCATION/HAS A LIMITED EDUCATION/HAS AT LEAST A HIGH SCHOOL EDUCATION]** [sic]." R. at 188.[3] The Government contends that the hypothetical need only

---

[3] The Court notes that despite the fact that Plaintiff went to college in his native Dominican Republic for two years, R. at 53-54, 158, since he cannot communicate in English, he is considered in the same class as an illiterate person. See R. at 41; 20 C.F.R. § 404.1564. However, since this particular factor is the least important consideration when making a determination of a claimant's RFC, the Court finds that any failure to consider education in

9

reflect Plaintiff's credibly established limitations, and that the hypothetical in this case did so. Def. Br. 6 (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 206 (3d Cir. 2008)). Upon examining the record, the Court notes that the interrogatory sent to the vocational expert did not have the form that the vocational expert filled out. *See* R. at 184-86 (ALJ's letter to vocational expert); R. at 187-92 (vocational expert's response). Ostensibly, however, the ALJ is supposed to modify that form to reflect the particular claimant. *See* R. at 188.

The hypothetical posed to the vocational expert reflected the ALJ's findings concerning Plaintiff's RFC. It asked, given a hypothetical individual who "can perform light work with the following limitations: He can do fine repetitive motion with the right hand only occasionally. He can never lift the right arm overhead. He can lift his right arm in all other directions only occasionally. He is limited to work with no more than 3 step instructions." R. at 191; *see also* R. at 39 (ALJ's RFC determination). This hypothetical also reflects all of Plaintiff's credibly established limitations. To the extent there were inconsistencies between the ALJ's submission to the vocational expert and the response received, such trivialities constitute harmless error. *See Shinseki v. Sanders*, 556 U.S. at 409-10 (discussing the burden of showing harmless error in the context of administrative review); *Morgan Stanley Capital Group Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 545 (U.S. 2008) ("To remand would be an idle and useless formality. [Courts are not required to] convert judicial review of agency action into a ping-pong game."); *Rutherford v. Barnhart*, 399 F.3d 546, 533 (3d Cir. 2008) ("remand is not required here because it would not affect the outcome of the case"). Thus, the ALJ's conclusion based on the hypothetical is supported by substantial evidence found in the record; therefore the Commissioner has sustained

---

determining Plaintiff's RFC constitutes harmless error. 20 C.F.R. Part 404, Appendix 2, § 202.00(g) ("the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance").

10

his burden of showing a significant number of jobs in which Plaintiff could work. The Commissioner's decision is affirmed.

## IV. CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, finds that the ALJ's determination that Plaintiff was not disabled was supported by substantial evidence. Therefore, the decision of the ALJ is affirmed. As neither the Plaintiff nor the Government challenge the Appeals Council's decision to find Plaintiff disabled on and after January 22, 2010, that decision is also upheld.

An appropriate Order accompanies this Opinion.

Dated: April 22, 2013

Jose L. Linares
United States District Judge